NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2807
_____

W.R. GRACE & CO., et al, Debtors

Garlock Sealing Technologies, LLC,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 11-cv-00199)
District Judge:  Hon. Ronald L. Buckwalter

_____

Argued
June 17, 2013

Before:  AMBRO, FISHER and JORDAN, *Circuit Judges*.

(Filed: July 24, 2013)
_____

Garland S. Cassada   [ARGUED]
Susan M. Huber
Richard C. Worf, Jr.
Robinson Bradshaw & Hinson
101 N. Tryon Street - #1900
Charlotte, NC   28246

Brett D. Fallon
Eric J. Monzo
Morris James
500 Delaware Avenue - #1500
Wilmington, DE   19801
        *Counsel for Appellant*

Ann C. Cordo
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street – 18th Fl.
Wilmington, DE   19801

John Donley   [ARGUED]
Lisa G. Esayian
Adam C. Paul
Kirkland & Ellis
300 N. LaSalle Street
Chicago, IL   60654

Roger J. Higgins
111 E. Wacker Drive - #2800
Chicago, IL   60601

Laura D. Jones
Kathleen P. Makowski
James E. O'Neill, III
Pachulski Stang Ziehl & Jones
919 N. Market Street – 17th Fl.
Wilmington, DE   19801

Christophen Landau
Kirkland & Ellis
655 15th Street NW - #1200
Washington, DC   20005
        *Counsel for Appellee W.R. Grace & Co.*

Mark T. Hurford
Campbell & Levine
222 Delaware Avenue - #1620
Wilmington, DE   19801

Peter V. Lockwood   [ARGUED]
Caplin & Drysdale
One Thomas Circle, NW - #1100
Washington, DC   20005
        *Counsel for Appellee Official Committee of Asbestos Personal Injury*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Garlock Sealing Technologies, LLC ("Garlock") appeals the June 11, 2012 order of the United States District Court for the District of Delaware affirming the Bankruptcy Court's confirmation of the plan of reorganization of W.R. Grace & Co. ("Grace") and denying Garlock's objections to that plan. Because we conclude that Garlock does not have standing to object, we will affirm.

## I.    Background

For more than a century, Grace has manufactured and sold specialty chemicals and construction materials. Previously, many of those products and materials included asbestos, and, beginning in the 1970s, Grace began to face personal injury lawsuits alleging harm from asbestos exposure. By 2001, Grace was involved in more than 65,000 asbestos-related lawsuits, which threatened its financial viability and prompted the company to file for Chapter 11 bankruptcy protection. After almost a decade of bankruptcy proceedings, Grace and several of its creditors' committees submitted a joint plan for reorganization (the "Joint Plan" or the "Plan") on February 27, 2009. The central pillars of the Joint Plan are two trusts – a personal injury trust and a property damage trust – that will assume all of Grace's current and future asbestos liabilities. The Joint Plan also provides for an injunction under 11 U.S.C. § 524(g), which channels all asbestos-related claims against Grace (and certain protected third parties) to the trusts. By permitting those injunctions, § 524(g) allows companies like Grace to emerge from bankruptcy free of asbestos liability, but only if the injunctions satisfy certain

3

prerequisites, including that they be "fair and equitable" to future claimants. *See* 11 U.S.C. § 524(g)(4)(B)(ii). Under the trust distribution procedures proposed by Grace's Joint Plan, asbestos personal injury claimants will receive between 25% and 35% of the liquidated value of their claims.

Garlock is a manufacturer of engineered industrial products, and it formerly used some of Grace's asbestos-containing materials in its products. As a result, the two companies were named as codefendants in thousands of personal injury lawsuits in the decades prior to Grace's bankruptcy, and they stipulated during the Chapter 11 proceedings that there would "likely" be future plaintiffs with claims against both companies. (J.A. at 500908.) Garlock says that, because of the prospect of joint liability with Grace, it has contribution rights against Grace and setoff rights against plaintiffs that obtain recovery from Grace. Garlock did not, however, file a proof of claim against Grace in the bankruptcy proceeding, and there is no evidence that it has ever asserted such rights in the past. In June 2010, Garlock also filed for bankruptcy, and it remains in Chapter 11 proceedings.

During Grace's confirmation hearing, numerous parties, including Garlock, objected to confirmation of the Joint Plan on the basis that it did not comply with the requirements of § 524(g). The Plan was amended to address many of those objections, and on January 31, 2011, the Bankruptcy Court overruled the remaining objections and entered an order confirming the Joint Plan. *In re W.R. Grace & Co.*, 446 B.R. 96, 102-03 (Bankr. D. Del. 2011). Specifically as to Garlock, the Court explained in its memorandum opinion that Garlock had "not established party in interest standing in

4

Grace's bankruptcy case," and therefore did not have standing to object to the Joint Plan. *Id.* at 123. The District Court agreed with the Bankruptcy Court, concluding on appeal that Garlock lacked bankruptcy standing because it "has not articulated how it has suffered any injury." *In re W.R. Grace & Co.*, 475 B.R. 34, 183 (D. Del. 2012). More particularly, the Court noted that Garlock "introduced no evidence that it ever actually impled Grace or sought contribution and/or set-off" during the decades prior to Grace's bankruptcy, nor had it shown that it had suffered a judgment during the bankruptcy that entitled it to contribution or setoff. *Id.* at 178-79. Furthermore, the District Court emphasized that Garlock had since "filed its own bankruptcy petition" seeking a reorganization using § 524(g), thereby "shield[ing] [itself] from additional liability and ongoing litigation." *Id.* at 178, 180. The District Court therefore affirmed the Bankruptcy Court's decision that Garlock lacked standing. Nonetheless, at the request of the parties, the Court also addressed the merits of Garlock's objections and concluded that, even if Garlock did have standing, its objections could be overruled on substantive grounds. *Id.* at 196. This timely appeal followed.

## II.    Discussion[1]

Under the Bankruptcy Code, any "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or an[] indenture trustee," has standing to "raise and … be heard on any issue" in a bankruptcy case.  11 U.S.C. § 1109(b).  That list of parties in interest is not exclusive, and it "has been construed to create a broad right of participation in Chapter 11 cases" that includes "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (en banc).  Nonetheless, "Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Id.* at 211.  A party objecting to the confirmation of a plan for reorganization under Chapter 11 must therefore "meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution." *Id.* at 210.

Those requirements include that the party has suffered an injury in fact.  Although any "specific, identifiable trifle of injury" will do, *id.* (internal quotation marks omitted),

---

[1]  The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  The District Court had appellate jurisdiction over the Bankruptcy Court's decision under 28 U.S.C. § 158(a).  We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291.  We exercise "plenary review of an order from a district court sitting as an appellate court in review of a bankruptcy court." *In re Exide Techs.*, 607 F.3d 957, 961-62 (3d Cir. 2010).  Under that standard, "[w]e review the District Court's conclusions of law de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.19 (3d Cir. 2004).  Under the clearly erroneous standard, we must uphold the Bankruptcy Court's factual findings unless we are "left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003).

6

Article III requires that there be some "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005)) (internal quotation marks omitted). "Allegations of possible future injury are not sufficient to satisfy" that standard, but a threatened injury may suffice, provided it is "certainly impending, and [will] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.* at 42 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (citations and internal quotation marks omitted). A party "lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Id.* (citing *Lujan*, 504 U.S. at 564).

Garlock argues that it has suffered an injury in fact because it has rights to contribution and setoff that will be harmed by the Joint Plan. It says that "there will undoubtedly be" future cases brought against it and Grace jointly, that those cases will give rise to contribution and setoff rights, and that it will be unable to fully enforce those rights because the personal injury trust will pay only 25% to 35% of the value of Grace's liabilities. (Garlock's Opening Br. at 13-14.) In other words, Garlock claims that the Plan threatens to diminish contribution payments and setoff amounts it may receive from Grace in future cases. Garlock concedes, however, that there is no evidence that it has ever sought contribution or setoff in the past due to Grace's liability, and it does not assert that it has any current claims against Grace. Rather, it explains that it resolved

7

prior cases "against the backdrop of" those rights, making it unnecessary to actually assert contribution or setoff claims. (*Id.* at 17.)

But that explanation does not address the absence of any contribution and setoff claims arising from cases brought against Garlock after Grace entered bankruptcy. Once Grace filed for Chapter 11 protection, all actions against the company were subject to an automatic stay under 11 U.S.C. § 362. Therefore, between 2001 and 2010 (when Garlock also entered bankruptcy), plaintiffs with joint claims against Grace and Garlock were able to recover only from Garlock. Yet Garlock concedes that there is no evidence that it ever "suffered a judgment for which Grace owes it contribution during Grace's bankruptcy." (Garlock's Opening Br. at 21.) It explains that deficiency by suggesting that it either was "successful in avoiding liability altogether," or had "settled common cases." (*Id.* at 21-22.) No matter how it tries to account for the fact, however, it remains a fact that, although new claims against Grace were stayed for almost a decade, Garlock never had a basis for asserting contribution or setoff rights during that period.

Garlock's alleged future injury can thus only be called speculative, and it fails to satisfy Article III's requirements for standing. In order for the Joint Plan to threaten Garlock's contribution and setoff rights, Garlock must have a basis for asserting those rights. That there may be future plaintiffs with claims against both Grace and Garlock – which is by no means a certainty[2] – does not by itself provide that foundation, as those

---

[2] Notwithstanding the parties' earlier stipulation that there will "likely" be future plaintiffs with claims against both companies, there is no evidence that such claims are "imminent" or "impending."

claims must also produce verdicts or settlements that entitle Garlock to contribution or setoff. Garlock has presented no evidence that any of the "thousands" of joint claims brought in the past have entitled it to enforce any such rights.[3] Far from being "certainly impending," *see Reilly*, 664 F.3d at 42, Garlock's alleged injury is therefore contingent on the occurrence of events that may never happen, and indeed may never have happened previously, making it more "conjectural or hypothetical" than "actual or imminent."[4] *Id.* As the Supreme Court has made clear, such "[a]llegations of possible future injury do not satisfy the requirements of Article III." *Whitmore*, 495 U.S. at 158. Accordingly, the

---

[3] That evidentiary deficit sets Garlock apart from other of Grace's codefendants. For example, the State of Montana has been named as a codefendant alongside Grace in many asbestos cases, and it presented evidence of a contribution claim against Grace arising from a $43 million settlement it reached with numerous asbestos claimants while Grace was under bankruptcy protection.

[4] Our holding in *Global Industrial Technologies* does not suggest otherwise, as Garlock contends. In that case, we considered whether several insurance companies had standing to object to a plan that assigned their policies to a § 524(g) trust. 645 F.3d at 205-06, 209. Although the plan did not "materially alter the quantum of liability that the insurers would be called to absorb," it triggered an "explosion of new claims [and] creat[ed] an entirely new set of administrative costs" for the insurers. *Id.* at 212, 214. We therefore held that "even if [the insurers'] ultimate liability is contingent, the harm … from the [p]lan is hardly too speculative for [the insurers] to be parties in interest." *Id.* Here, however, there has been no allegation of any explosion of new claims against Garlock, and the claims that have been brought against it are due to its own asbestos liability, not to the Joint Plan. In fact, the alleged harm in the two cases is entirely different – the insurance companies complained that the plan at issue increased the number of claims against it, whereas Garlock complains that the Joint Plan may reduce future contribution payments and setoff amounts. Garlock's situation is therefore readily distinguishable from the circumstances in *Global Industrial Technologies*.

9

Bankruptcy Court and District Court correctly determined that Garlock lacks bankruptcy standing.[5]

## III.    Conclusion

Because Garlock failed to demonstrate an injury in fact as required by Article III and the Bankruptcy Code, we will affirm the ruling denying its standing to object to the Joint Plan.

---

[5] Because we conclude that Garlock lacks bankruptcy standing, it also lacks bankruptcy appellate standing, which is "more limited than standing under Article III." *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).